## MARINE BANK OF CRISFIELD vs. WILLIAM S. STIRLING, Trading as WILLIAM A. STIRLING, JR. ·

*Banks and bank deposits; suits by depositors for balance; set-off and payment; evidence; deposit books; bank's by-laws and ledgers; published reports. Entries in due course of business. Published reports.*

A depositor having an account in the savings department of a bank and a separate checking account, brought suit against the bank for the balance claimed by him in the savings department; the bank filed the plea of payment and set-off, on the ground that his checking account was overdrawn, and that the balance of the account with the savings department was liable; the bank undertook to show the amount deposited and checked out; the plaintiff had been cross-examined as to an interview with the bank about his deposits; on his re-direct examination he was asked what he had said about the amount of his deposits; the question and answer were excepted to. On appeal, it was *held,* that the testimony was admissible.                                           p. 97

The fact that the deposit book of the bank did not have the signature of the president, as required by the bank's by-laws, did not render the book inadmissible as evidence in a suit by the depositor for his deposits.                           · p. 97

The president of the bank had testified that the plaintiff had overdrawn his account; on cross-examination he was asked what connection he had had with the reports of the bank; objection to this evidence having been made and overruled, and exception taken, it was *held,* on appeal, that the inquiry was proper.                                    pp. 97-98

An inquiry of the president as to the capital stock of the bank was proper.                                          p. 99

A summary of the bank's report published, as required by law, with the verification properly sworn to by the cashier, and attested by three directors including the president, could be offered in evidence and the president might be cross-examined on the same.                                                    p. 100

But the published report was not conclusive and the defendant bank was at liberty to explain it.                           p. 100

Such a publication is for the benefit of the public, and is not a copy in the sense that there is an original which should be produced instead of the published report.                    p. 100

Where great inaccuracies were shown in a bank's account of the checks drawn by the depositor, it was *held*, that there was too much uncertainty and unreliability in its ledger to permit it to be used as evidence *per se*.                        p. 102

Where certain checks drawn on a bank had not been entered up on the account of the depositor by the clerk whose duty it was to make the entry, but afterwards upon being found "loose in the bank" they were entered up by his successor, this was not such an entry in due course of business, contemporaneously with the transactions, as to make the entries evidence.                                               p. 103

The defendant bank had covered the balance, which it claimed the plaintiffs owed on his "checking account" because of the alleged overdrafts, by transferring to that account the balance in the savings department.  *Held*, that as there was no evidence of any payment on the balance of the savings account sued for, it was the duty of the bank to establish the set-off.
                                                          p. 106

*Decided February 3rd, 1911.*

Appeal from the Circuit Court for Wicomico County. (Pattison, C. J., and Jones, J.).

The prayers offered in the case were as follows:
*Plaintiff's 1st Prayer.*—The jury are instructed, that, if they shall find from the evidence that the plaintiff made the

deposits in the savings department of the defendant bank, as they are entered in the bank pass books offered in evidence, and withdrew from said savings bank account the amounts appearing in the said savings bank pass books, then their verdict must be for the plaintiff, in the amount, if any, which they may find to be to the credit of plaintiff on said books, unless the jury shall further find that the plaintiff is indebted to the defendant, upon the set-off filed by the defendant bank in this case to an amount equal to or greater than the balance, if any, which they may find to be due the plaintiff upon the savings bank account above mentioned. (*Granted.*)

*Plaintiff's 2nd Prayer.*—The jury are instructed that the burden of proof is upon the defendant to establish its set-off filed in this cause, by a preponderance of evidence, and if the minds of the jury are in a state of equipoise or even balance as to whether anything is due the defendant under the set-off filed in this case, then their verdict must be for the plaintiff, if the jury further find that there is anything due the plaintiff upon the savings bank account mentioned in the evidence in this cause. (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury find from the evidence that there is a balance due the plaintiff upon the savings bank account mentioned in the evidence, and further find that the defendant is not entitled to recover anything upon its set-off filed in this case, then the verdict of the jury must be for the plaintiff in the amount, if any, so found by them to be due the plaintiff upon said savings bank account. (*Granted.*)

*Plaintiff's 4th Prayer.*—The plaintiff prays the Court to instruct the jury that there is no legally sufficient evidence in this case to establish the defendant's plea of set-off filed in this case. (*Rejected.*)

*Plaintiff's 5th Prayer.*—The jury are instructed, that, before they can find for the defendant upon its claim in the set-off, under the pleading and issues in this case, they must first find from the evidence and from all the facts and circumstances in the evidence relating thereto that the deposit slips offered in evidence cover all the deposits, on his checking

account, made by the plaintiff, in the defendant bank, from October 9th, 1906, to February 8th, 1909; that the burden of proof is on the defendant to show this fact, by a preponderance of evidence, and if the jury shall believe that said slips do not cover all of said deposits and that defendant has failed to establish that fact by a preponderance of evidence, then they cannot find for the defendant on said set-off. (*Rejected.*)

And the defendant offered the following five prayers:

*Defendant's 1st Prayer* (as amended).—The defendant prays the Court to instruct the jury, that, if the jury believe from the evidence that the plaintiff made the certain checks, drafts and notes offered in evidence, and directed the same to be paid by the defendant, and that the defendant actually did pay the same, and that the amount of said checks, drafts and notes, if the jury shall find that they were made, directed and paid as aforesaid, exceed the aggregate sum or sums of such deposits, including deposits in the defendant's savings department, less withdrawals therefrom, as the jury shall find were made with the defendant by the plaintiff to or for his credit, then, under the defendant's plea of set-off filed in this case, their verdict must be for the defendant for the difference, if they so find such difference, between the full amount of said checks, drafts and notes and the full amount of said deposits less said withdrawals. (*Granted.*)

*Defendant's 2nd Prayer.*—The defendant prays the Court to instruct the jury, that if the jury believe from the evidence that the plaintiff made the certain checks, drafts and notes offered in evidence, and directed the same to be paid by the defendant, and that the defendant actually did pay the same, and that the amount of said checks, drafts and notes, if the jury shall find that they were made, directed and paid as aforesaid, exceed the aggregate sum or sums of such deposits, including deposits in the defendant's savings department, less withdrawals therefrom, as the jury shall find were made with the defendant by the plaintiff to or for his credit, then, under the defendant's plea of set-off, filed in this case, their verdict must be for the defendant for the difference, if

they so find such difference, between the full amount of said checks, drafts and notes and the full amount of said deposits less said withdrawals; and the defendant further prays the Court to instruct the jury that the plaintiff is not entitled to and should not be allowed to credit for any deposits except such as he shall show in his case by a preponderance of evidence to have been made by him with the defendant.
(*Rejected.*)

*Defendant's 3rd Prayer.*—The defendant prays the Court to instruct the jury that the plaintiff has offered no legally sufficient evidence of any deposits in the defendant bank, except the deposits to the account known and offered in evidence as a savings account; and if the jury shall believe from the evidence that the plaintiff did, in or about the month of October, 1906, begin to keep another account in the defendant bank other than the savings account aforesaid, in or to which other account he made sundry deposits, and upon which he drew sundry checks and drafts before the bringing of this suit, and that at the time of bringing this suit by the plaintiff, the plaintiff had overdrawn his last named account, that is to say, that his checks and drafts on the same exceeded his deposits to said account after giving him credit on said account with the balance they may find standing to his credit on the savings account, then their verdict should be for defendant for such amount as they may find from the evidence that the checks and drafts did exceed the said balance of savings deposit added to the deposits to the other or checking account as shown by the defendant in this cause. (*Rejected.*)

*Defendant's 4th Prayer.*—The defendant prays the Court to instruct the jury that there is no legally sufficient evidence of any deposits in the defendant bank by the plaintiff, except such deposits as the defendant itself has shown, together with the deposits to the account known as the savings deposits which the plaintiff offered in evidence. (*Rejected.*)

*Defendant's 5th Prayer.*—The defendant prays the Court to instruct the jury, that, if they believe from the evidence the plaintiff kept two accounts in the defendant bank, one

known as the savings account, and the other known as a checking account, to which last named account he made sundry deposits, and upon which he drew sundry checks and drafts, then in finding their verdict the plaintiff is entitled to be credited with any balance they may find from the evidence to be standing to his credit in the said savings account, together with all deposits made to his other account known as a checking account, and if they shall further believe from the evidence that the plaintiff drew checks and drafts on the said checking account, and that the same were paid by the defendant, and that the said checks and drafts were equal to the balance of the said savings account, together with the said deposits to the other or checking account, then their verdict should be for the defendant; and if they shall further find from the evidence that the said checks and drafts exceeded the balance in said saving account, together with the deposits to the other or checking account, then their verdict should be for the defendant for such excess as they shall so find. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, THOMAS and URNER, JJ.

*Miles* and *Stanford,* for the appellant.

*William L. Rawls* (with whom were *George Weems Williams* and *Thomas S. Hodson* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee sued the appellant to recover a balance due him on his account with the bank in its savings department. The defendant plead the general issue, payment and set-off. The appellee had two accounts in the bank—one in the savings department and the other being what is spoken of as his "checking account"—and the plea of set-off was based on the claim of the appellant that the appellee had largely overdrawn his "checking account" and owed it considerably more

than the amount admitted to be deposited in his savings account. There are seventeen bills of exception in the record, sixteen of which embrace rulings on the admissibility of evidence, and the seventeenth presents the rulings on the prayers. The plaintiff offered five prayers, the first, second and third of which were granted, and the other two rejected, and the defendant also offered five, the first of which was granted as amended, the fifth was granted as offered, and the others were rejected. The trial resulted in a verdict for the plaintiff for $1,530.21, that being the balance due on the savings account. From the judgment rendered on that verdict this appeal was taken.

The plaintiff had two books in the savings department, but one is a continuation of the other; the balance in book No. 1 having been carried to book No. 2. In those books there is printed what purport to be extracts from the by-laws of the bank. Among other provisions, is one that, "The book shall also contain such extracts from the charter and by-laws of the bank, signed by the president, as may be interesting to the depositor." At the end of the printed matter is a blank line with the word "President" under it, but his signature is not in either book. The plaintiff identified the books handed to him on the witness stand, and testified that the entries were made by the officials of the bank, showing a balance of $1,530.21, the last entry being on February 1st, 1909. The plaintiff's attorney then offered and read in evidence the entries of deposits and withdrawals as shown on said books Nos. 1 and 2. The witness further testified that the printed part of the books was in them at the time they were issued to him, and the plaintiff's attorney undertook to read the printed part of said books to the jury, but the defendant objected, and the objection being overruled the defendant excepted. That constitutes the first bill of exceptions. The plaintiff then offered the books in evidence, but the defendant objected. The objection was overruled, and the books and everything in them were admitted in evidence. That ruling is embraced in the second bill of exceptions.

There was no error in those rulings. It is true that the signature of the president does not appear in the books, but they were issued to the plaintiff, as testifid by him and not denied by the defendant. The terms upon which the deposits were made are to be found in them—amongst others that, "Depositors shall have the right to withdraw their deposits at any time, by giving one month's notice of their intention; but this notice may be dispensed with, in the discretion of the officers of the bank, and the same paid on demand." It would scarcely be contended that the appellee could under that provision have withdrawn his deposits without giving one month's notice, because the president's signature was not in the books. Nor could it be successfully contended that after such notice was given he could not have withdrawn his deposits, together with interest allowed under the terms stated—unless, of course, there was some valid reason other than the absence of the president's signature. If the absence of the president's signature had that effect, the bank could profit by its own wrong or neglect in not having the signature attached, as provided by its by-laws.

When the appellee accepted the books he did so on the terms therein mentioned, and from October 11th, 1907, the date of the first deposit until February 1st, 1909, the time of the last deposit, both he and the officials of the bank acted under that contract over and over again. It was certainly permissible to offer the books to show the deposits and withdrawals, and as the terms on which the deposits were made were in the books, we can see no reason for excluding them, but on the contrary it was proper to put them in evidence in order to prove the conditions on which the deposits could be withdrawn.

Nor do we find error in permitting the plaintiff to answer the question included in the third bill of exceptions. He had been cross-examined at some length, as to an interview he had had at the bank about his deposits. He had said that it was strange he could not see his deposit slips for all the money he had put in the bank, and on re-direct examination

he was asked to state what he had said about the amount of his deposits, and replied: "I said, 'It is strange, Mr. Stanford, that I can't see my deposit slips running more than $20 to $120.' I am positive I have put more money in that bank than they have given me credit for. I didn't make out all the deposit slips myself, but part of them were made out by someone else." He was then asked, "What did you say about the deposit slips?" Which question was objected to, and the objection was overruled. His answer was, "The ones that I saw? I saw a majority of them, but there was some of them missing. There was some that appeared agree-- able to me but there was a considerable number of them that was so small that I thought it strange. I know I put more money in there than I got credit for, and I don't think I got justice." The theory of the defendant was that the plaintiff's account was overdrawn, and it was undertaking to show the amount he had deposited and the amount he had checked out. The plaintiff on the other hand contended that he had deposited more than the deposit slips showed, and under the circumstances we can see no reason why that testimony was not admissible.

In the fourth bill of exceptions the testimony of Dr. Atkinson, the president of the bank, begins,—the plaintiff having rested. The doctor had testified in chief that at interviews at the bank in February, 1909, the plaintiff went over every check that he had drawn, was shown his deposits and acknowledged every check that was shown him; that he was told the amount he had overdrawn and was shown the individual ledger containing his account. He further testified that there were a number of plaintiffs checks found loose in the bank, which had not been posted on the ledger or charged against plaintiff's account, which caused the overdraft. Amongst other questions asked him on cross-examination was: "Dr. what connection did you have with the reports of the bank?" That was objected to, and the objection being overruled, the fourth exception was taken. That was also in our judgment admissible. The doctor having testified that the plaintiff had

overdrawn his account, the evident purpose was to ascertain the doctor's connection with the reports which were made by the bank and the subsequent testimony shows that such was the case, if there was any doubt about it then. In the next exception (the fifth) the doctor was·asked: "What was the capital stock of the bank?" The object of that was to reflect upon the controverted question, whether there was an over draft such as the defendant claimed. It had claimed $6,000 in its plea of set off, and it contended that there were overdrafts by the plaintiff amounting to $5,700.00. The theory of the defendant was that the overdrafts were the result of a number of checks not being charged against the plaintiff's account,—they being "found loose in the bank," as the doctor had testified. If the bank was a small one with a capital of only $25,000, such a discrepancy would likely be more easily detected than if it had a large capital and was doing a large business. So we think there was no error in either the fourth or fifth bills of exception. That brings us to the sixth, which further shows the relevancy of those questions.

While Dr. Atkinson was still under cross-examination, he was handed a copy of the *Crisfield Times,* dated December 5th, 1908, and testified that he had seen a statement or report of the condition of the Marine Bank of Crisfield published therein, and was asked if he had a copy of that report, to which he replied he had not, and added, "I inquired of the cashier·and he said that he had none except some lead pencil notes, which he could not furnish me; that the original copy was on file at the treasurer's office." Whereupon the plaintiff offered said statement, as contained in the *Crisfield Times,* to which the defendant objected, but the objection was overruled and the Court permitted it to be admitted in evidence. Before reading the report to the jury the witness ·was asked, "Will you look at that report which has been offered in evidence, marked 'B. M. F. J.' Is that a copy of the report," and answered, "Yes, sir; that is a copy of the report." It purported to be a report of the condition of the

appellant's bank at the close of business November 27, 1908. It stated the resources and liabilities, in the usual form of such publications, purported to be sworn to by the cashier, and was attested by three directors, including Dr. Atkinson. The manifest purpose of the offer was to show that in the published report was the statement, "Overdrafts, secured and unsecured, 82.04." As in February, 1909, the defendant claimed that the plaintiff was overdrawn $5,700.00, and it was not pretended that all of such overdrafts occurred between the date of the publication of the report and the early part of February, about two months, it was proper to show that the appellant had published that the total overdrafts of the bank on November 27th, 1908, were $82.04. Of course it was not conclusive, but the appellant was at liberty to explain it, and did undertake to do so by offering evidence tending to show that the overdrafts were not discovered until afterwards, because the checks had not been posted. But the plaintiff was not concluded by that explanation, and the discrepancy showed such irregularities as might well have caused the jury to decline to accept the claim of the bank as correct, for if checks amounting to $5,700.00 could be loose in the bank, and not entered on the books, the jury might have concluded that the plaintiff was right in saying that he was entitled to more credits than the bank gave him. There was no contention about the plaintiff's account in the savings department, and the burden was on the defendant to establish the overdrafts. 19 *Ency. of Pl. & Pr.* 800.

It is contended, however, that the publication was not admissible because it was merely a copy. But it is only a summary of the report made to the treasurer which is by section 12 of Article 11 of the Code required to be published in some newspaper published in the county where the bank is located, and it is not necessarily a copy of the report made to the treasurer. Such publications are intended for the benefit of the public, as Dr. Atkinson well said, and it would be difficult to prove the authenticity of a statement so published in a more definite way than was done in this case—

being proven by the president, who had attested it. It cannot be said that such a publication is a copy in the sense that there is an original which must be produced instead of the copy, for in such cases every publication shown to be authentic and authorized is an original. We are of the opinion, therefore, that there was no error in the ruling in that (sixth) exception.

The seventh, fourteenth and fifteenth bills of exception will be considered together. In the seventh the defendant offered the account of the plaintiff's deposits as shown on the individual ledger; in the fourteenth it offered the account of the deposit slips as shown upon that ledger, and in the fifteenth it offered the whole account, deposit entries and debit charges of the plaintiff, as shown on the ledger. In each instance the Court refused to admit the account. The contention of the defendant was that the individual ledger as kept in the course of business was not correct, in so far as the checks were concerned, and the plaintiff claimed they were not correct as to the deposits. P. H. Lawson, the individual bookkeeper, testified that he did not receive the deposits, which were usually received by the assistant cashier or the cashier, who put the deposit tickets on a spindle or file, and he would "post them when he got them." He further testified on cross-examination that "he did not know anything about certain checks which were not entered in the said ledger, but that it was witness' intention to post every check that came to him, and that so far as witness knew the checks were entered up as they were put upon the spindle, and that if they had been put on the spindle they would have come into his hands, and that after the deposits were made the deposit slips were put on a spindle and the witness entered them up, and if they had not been put on the spindle he could not have entered them up. In other words if they had not reached him they would not appear on his books." Mr. Long, the assistant cashier, testified that when Mr. Lawson left the bank he took up his work, that at that time Mr. Lawson was about eleven days behind hand, and when witness

posted the individual ledger, and compared it with the balance on the general ledger he found a difference of about $16,000. He then went over the whole work again and found a lot of checks which had not been charged to the plaintiff's account, and that plaintiff had made an overdraft of something in the neighborhood of $5,700.00, "which were the checks that had not been charged to his account, and that those unposted checks were found in Mr. Lawson's drawer or desk at the time he left the bank, and which had not been charged up when he left the bank." He further testified that "the balance on the general ledger was correct and that the balance on the individual ledger was incorrect, and that such difference was occasioned by the fact that certain checks drawn on the bank had not been charged." It is therefore clear that the individual ledger did not correctly state the condition of the account with the plaintiff, when Mr. Lawson left, and later the unposted checks which were found in the bank were entered in that account, and the balance in the savings account was transferred to it.

Without meaning to concede what seems to be the appellee's contention, that an individual ledger in a bank, although shown to contain the entries of deposits and checks and made contemporaneously in due course of business, would not be admissible in evidence to show the deposits, because they are not the original entries, but the deposit slips are the best evidence, we are of the opinion that this particular ledger could not properly have been admitted as independent evidence, regardless of the question whether the individual ledger or deposit tickets are generally speaking to be treated as containing the original entries of a bank. The defendant itself proved that the account with the plaintiff at the time of the transactions, as found in that ledger, was not correct, but on the contrary, according to its contention, checks amounting to $5,700 were not entered until sometime after the clerk who kept the individual ledger had left the employ of the bank. The checks which were then entered to that amount, were "found loose in the bank," and they were there-

fore not entered in due course of business or contemporaneously with the transactions. In addition to that, after this controversy had begun, the balance plaintiff had in his savings account was transferred to that ledger, and the plaintiff claims he had not been credited with all the deposits he had made. Such a claim would not ordinarily of itself affect the admissibility of an individual ledger, containing the accounts between depositors and the bank, but under such circumstances as are shown in this case there is too much indicating the uncertainty and unreliability of this ledger account to permit it to be used as evidence *per se,* or even in connection with the testimony of the witnesses, beyond the use that was made of it.

But in addition to what we have said it is clear that the defendant was not injured by the action of the Court, as all of the deposit slips and checks which the defendant claimed were on the ledger were not only offered in evidence, but the witnesses were permitted to compare them with the entries on the ledger and to testify that all of them were on it.

After the deposit slips were identified and offered in evidence, Mr. Long, the assistant cashier, testified as follows: Q. Have you, Mr. Long, checked them as to your ledger accounts? A. Yes, sir. Q. Are they the same or not? A. Yes, sir. Q. Are there any other deposit slips that were entered on the book,—I mean not posted to the credit of Mr. Sterling? A. No, sir. Q. What is the total of these, if you can tell me, Mr. Long? A. $14,161.35." Mr. Lawson was then recalled, "and upon being shown said individual ledger testified that he so entered all of them" (deposit slips) "up in due course of business from the beginning of the account down to the item of January 7th, 1909, inclusive." Mr. Long was then recalled and testified "that he entered the last three items on the book, that is from January 7th, 1909, from the deposit slips, and that such entries were from deposit tickets, and that the total of deposit slips offered in evidence was $14,;161.35, and that the total of all the checks admitted by the plaintiff to have been drawn by him upon and paid

out by the bank was $18,267.00, even money * * * and that he had added the deposits as entered on the books as corresponding exactly with the figures so given as the total of the deposits." The plaintiff's pass book was also offered in evidence by the defendant, showing the deposits.

It is thus clear that the defendant not only had the benefit of all the deposit slips and checks in evidence, but the witnesses were permitted to refer to the ledger and testified that the entries on it corresponded with the slips and checks. It is, therefore, apparent that the defendant was not injured in any way by the rulings as to the admissibility of the ledger, even if there had been error in originally excluding it. There was, therefore, clearly no reversible error in the rulings in the seventh. fourteenth and fifteenth exceptions. and under the circumstances no error in the course pursued by the Court in reference to them.

Nor was there any error in the eighth, ninth, tenth, eleventh, twelfth or thirteenth exceptions. The questions included in them referred to the published report, heretofore spoken of, the effort being to show that the statements in that report could not be correct, if the defendant's position taken at the trial was correct. The questions which were propounded to the assistant cashier not only did not injure the defendant, but gave him an opportunity to explain some of the statements, which explanation was likely to be helpful rather than injurious to the bank.

In the sixteenth exception the question was, "What have you to say, Mr. Sterling, with regard to an overdraft, if any, at the Marine Bank? What do you say about it?" That was after the defendant had endeavored to show the overdrafts, and it was clerly proper to offer the plaintiff in rebuttal. There was no error in that ruling.

This brings us to the last (seventeenth) exception, which includes the prayers. The plaintiff's first prayer seems to us to be unobjectionable. The appellant contends that it and the other prayers of the plaintiff which were granted should have submitted the question of payment, as well as that of

set-off, as there was a plea of payment filed. But there was no evidence of any payment, not credited on the amount sued for, which was the balance in the savings department account. On the contrary, the defendant admitted it, and actually credited the plaintiff with the balance on the other account, which the defendant contended was overdrawn. We are also of the opinion that the prayer is not subject to the objection urged that it submitted certain specific items and ignored other material facts. It fairly submitted the whole case.

The plaintiff's second prayer instructed the jury that the burden was upon the defendant to establish its set-off by a preponderance of evidence, and if the minds of the jury were in a state of equipoise or even balance, as to whether anything was due the defendant under the set-off, then their verdict must be for the plaintiff, if the jury further found that there was anything due the plaintiff on the savings bank account. The burden was undoubtedly on the defendant to establish the set-off, and the rest of the prayer was sufficiently explicit to avoid the objection mentioned in *United Railway and Electric Company* v. *Cloman,* 107 Md. 681. There can be no valid objection to the plaintiff's third prayer.

The Court was also correct in amending the defendant's first prayer by striking out the concluding part. Under the facts we have already stated and others in the record, there was undoubtedly evidence from which the jury might find that the plaintiff had made deposits other than those shown by the deposit slips, as the plaintiff testified that he had. There was certainly sufficient evidence to justify the jury in reaching the conclusion that they could not rely on the account as kept by the appellant with the appellee, for the appellant showed that it had failed to charge him with checks amounting to $5,700, until they were found loose in the bank. If a bookkeeper or other employee of the bank would neglect to charge a depositor with such an amount of checks, he was certainly liable to neglect to credit him with some of his deposits, and if the deposit slips were not more care-

fully preserved than the checks were, there is reason to believe that some of them may have been lost. Without prolonging this opinion further by a recital of other facts, we are of the opinion that under the circumstances the Court was right in amending the first prayer, as it did.

The defendant's second prayer was objectionable because it concluded by placing the burden on the plaintiff to prove the deposits. As the defendant's set-off was based on the claim that the plaintiff had overdrawn his checking account, it was incumbent on it to prove it, especially under such circumstances as are shown in the record. What we have already said will relieve us of discussing the third and fourth prayers of the defendant. The judgment must be affirmed.

*Judgment affirmed, the appellant to pay the costs.*