THE PEOPLES NATIONAL BANK OF MIDDLETOWN, DELAWARE, a corporation existing under the laws of the United States of America, vs. GEORGE B. W. RHOADES.

1.   EVIDENCE—BOOKS OF ACCOUNT—STATUTORY PROVISIONS.

Under Rev. Code 1852, amended to 1893, p. 799, c. 107, § 11, making a book of account admissible to charge the defendant for goods sold and delivered and other matters properly chargeable in an account, but providing that cash items are not so chargeable, the books of a bank are admissible to charge the depositor with the items therein shown; the last clause of the statute not applying to such books, since the business of the bank consists almost entirely of such dealings.

2.   BANKS AND BANKING—ACTIONS—ADMISSIBILITY OF EVIDENCE—STATEMENT OF CONDITION.

In an action by a national bank upon an overdraft, the statement made by the bank to the comptroller, subsequent to the time the defendant was notified of the overdraft, which statement showed the amount of the overdrafts due the bank, had some probative force, and was therefore relevant and admissible.

3.   EVIDENCE—DOCUMENTARY EVIDENCE—PUBLISHED REPORTS.

The contents of the statement of the condition of a bank, which is required by law to be published in a newspaper, may be proved by the introduction of a paper containing the report, since every such paper is itself an original, and not a copy.

4.   BANKS AND BANKING—DEPOSITS—RELATION BETWEEN BANKER AND DEPOSITOR.

A depositor, when he deposits money in a bank, becomes the creditor of the bank, and the bank becomes his debtor. The depositor is entitled to draw orders upon the bank for the payment of money which the bank, if indebted to him in an amount equal to or in excess of that appearing in the order, must pay on presentation.

Statement.

5. BANKS AND BANKING—OVERDRAFTS—LIABILITY OF DEPOSITOR.

When a depositor draws upon a bank in excess of the amount the bank is indebted to him, and the bank honors the order and pays it, such payment is a loan made to the depositor, which the latter impliedly promises to repay.

6. BANKS AND BANKING—OVERDRAFTS—PROMISE TO PAY.

Where a bank notified a depositor that a check drawn by him had been presented to it for payment, and that there were no funds in the bank to pay the check, and the depositor promised to reimburse the bank if it would pay the check, the bank is entitled to recover the amount paid on the check.

7. BANKS AND BANKING—OVERDRAFT—ACTIONS—PRESUMPTION.

When a bank pays checks drawn upon it, the presumption is that the drawer had funds to meet the checks; but such presumption is not conclusive, and may be rebutted by other evidence.

8. TRIAL—QUESTIONS FOR JURY—CONSIDERATION OF EVIDENCE.

It is the duty of the jury to consider all the evidence in the case, whether it be oral, published, or documentary.

9. EVIDENCE—WEIGHT—"PREPONDERANCE OF TESTIMONY".

In an action to recover the amount of an overdraft at a bank, the jury should find a verdict for the party on whose side the evidence preponderates; and by the "preponderance of testimony" is meant the greater weight of the evidence, and not necessarily the greater number of witnesses.

(*May* 21, 1913.)

Judges WOOLLEY and RICE sitting.

*Martin B. Burris, Andrew E. Sanborn* and *John W. Huxley, Jr.,* for plaintiff.

*Levin Irving Handy* and *Wilbur L. Adams* for defendant.

Superior Court, New Castle County, May Term, 1913.

ACTION OF ASSUMPSIT (No. 81, May Term, 1912) by the Peoples National Bank of Middletown, Del., against George B. W. Rhoades to recover from the defendant, a depositor in the plaintiff bank, overdrafts amounting to one thousand four hundred and fifty-seven dollars and forty-three cents. Action on the common counts with bill of particulars filed. Jury disagreed.

At the trial the checks and notes drawn by the defendant on his account in the plaintiff bank and paid by it were admitted into evidence by agreement. The plaintiff offered the individual journal No. 14, containing the debits and credits of all the depositors in the bank, covering the year 1906, and counsel stated that he wished to prove the entry of November 28, 1906, being the

entry of the first check in the series, paid by the plaintiff, previously admitted in evidence; the purpose of the testimony being to show the state of the defendant's account in the bank.

*Mr. Handy* objected on the ground that such testimony would be testimony of a cash item in a book account to charge the defendant, which would be contrary to the provision of the statutes of this state. *Revised Code* 1852, amended to 1893, *p.* 799, *c.* 107.

RICE, J.:—[1] The statute of this state (*Revised Code* 1852, amended to 1893, *p.* 799, *c.* 107, § 11), in respect to a book of original entries and charges thereon, provides: "A book of original entries, regularly and fairly kept, shall, together with the oath, or affirmation, of the plaintiff, be admitted in evidence to charge the defendant with the sums therein contained for goods sold and delivered, and other matters properly chargeable in an account. Cash items are not properly so chargeable."·

While there can be no doubt, and it has often been decided by the court, that in a merchandise business cash items are not such items as are properly chargeable in a book account, yet we think when the business is one of banking, where the commodity dealt in between the depositor and the bank virtually is cash, then it does constitute an item properly chargeable in a book account. It comes within the provision of that part of the statute which permits "other matters properly chargeable in an account" to be admitted in evidence, and it does not fall within the inhibition that "cash items are not properly so chargeable." We are of the opinion, as between a bank and a depositor, that a book of original entries regularly and fairly kept, containing cash items of the account of the depositor with the bank, may, under the provisions of the statute, be admitted into evidence to charge the depositor with the items. We overrule the objection and admit the book in evidence.

Counsel called one F., as a witness, on behalf of the defendant, and proved by him that as publisher of a newspaper known as "The New Era" in Middletown, Delaware, he published in said

paper a statement of the condition of the People's National Bank of Middletown, the plaintiff; that the facts and figures contained in said statement were furnished to him by the cashier of said bank upon a blank, the same being brought by the cashier, the bookkeeper, or a clerk, to the newspaper office. The witness was thereupon handed a copy of the said newspaper, which was of a date subsequent to the time when the defendant was notified of his overdraft, containing a publication of the report referred to, and asked the following question:

Q. Is that a correct publication of the report sent you by the People's National Bank of Middletown, Delaware?

(Objected to by Mr. Sanborn, of counsel for defendant, on the ground that if the publication referred to was a report of anything to be offered in evidence, it ought to be the original report, and not a copy of it; that the original was the best evidence, and that under the well-settled practice the original should be produced, and that a copy could only be introduced when the absence of the original was accounted for by being lost or destroyed.)

RICE, J.:—Does not the law require that this statement shall be published?

*Mr. Sanborn:*—I think it does; but the published statement may not be a true and correct copy of the original, and the best evidence is the original certificate which is on file in the Comptroller's office of the United States, and could easily be produced.

But there is a broader ground that I wish to urge against the introduction of evidence of this character. Whether the report of the condition of the bank is true or not in respect to the overdraft, it has no relevancy or bearing upon the issue in this case, which is, whether or not there has been an overdraft in this bank by this defendant. The unimpeached evidence introduced thus far of the books and the records in the case, and the checks of the defendant, shows that there was an overdraft and that these books are correct. Therefore, whether the bank officer failed in his duty or not in making a correct statement of the overdrafts at the period mentioned in the report, has no bearing upon the question at issue involved in this case; furthermore, there has been no

proof that this is a true and correct copy of the original required by the law to be filed at Washington.

*Mr. Handy* contended that every publication in a newspaper of such a nature was for the information of the public and was an original, and admissible in evidence as such, citing *Marine Bank v. Stirling*, 115 *Md.* 99, 80 *Atl.* 736.

RICE, J., delivering the opinion of the court:

[2]  There are two objections to this question, first, on the ground of irrelevancy, that the matter to be disclosed by the question is not material.

We think this matter has some probative force, and that it is a proper matter for consideration by the jury, who may give it the probative force they believe it is entitled to.

[3]  On the second point raised, we find in 115 *Maryland*, in the case of *Marine Bank v. Stirling*, on *page* 100, 80 *Atl.* 739, in the opinion of the court, the following:

"It is contended, however, that the publication was not admissible because it was merely a copy. But it is only a summary of the report made to the treasurer which is by *Section* 12 of *Article* 11 of the *Code* required to be published in some newspaper published in the county where the bank is located, and it is not necessarily a copy of the report made to the treasurer. Such publications are intended for the benefit of the public, as Dr. Atkinson well said, and it would be difficult to prove the authenticity of a statement so published in a more definite way than was done in this case—being proven by the president, who had attested it. It cannot be said that such a publication is a copy in the sense that there is an original which must be produced instead of the copy, for in such cases every publication shown to be authentic and authorized is an original. We are of the opinion, therefore, that there was no error," etc.

The requirement of the law in this respect is twofold: *First*, it requires a copy of the original to be sent to the department at Washington; and *second*, it requires the bank to perform a duty to the public. That duty is the publication, not perhaps of a full copy of the report, but at least a summary of the report, in a news-

paper in the county where the bank is located. They use the newspaper as their agent to apprise the public of the standing of the bank, as made in the report to the authorities at Washington. And therefore we think that every authorized and authentic newspaper publication of that report so published by the bank to apprise the public is, itself an original copy. We overrule the objection.

RICE, J., charging the jury:

Gentlemen of the jury:—The dispute in this case arises over the alleged overdrawing by the defendant of his account in the People's National Bank of Middletown, Delaware, a corporation existing under the Laws of the United States, the plaintiff. The action is in asumpsit and the plaintiff filed its declaration covering the common counts of goods sold and delivered, work and labor done, money loaned and expended for the use of the defendant, money had and received, and money due and owing upon an account. There has also been filed by the plaintiff a bill of particulars setting forth checks and notes paid by the plaintiff for the defendant and charged to his account, covering a period of time from November 28, 1906, to March 29, 1912, inclusive, and likewise setting forth deposits, during the same time, made by the defendant in the National Bank of Middletown and credited to his account. It is claimed by the plaintiff that the amount of the payments made by the bank on the defendant's account, upon his orders, exceeds the amount of the deposits, made by him, in the sum of one thousand four hundred and fifty-seven dollars and forty-three cents. It is this amount of one thousand four hundred and fifty-seven dollars and forty-three cents that the plaintiff claims the defendant is now indebted to it and for the recovery of which this suit is brought.

To the declaration of the plaintiff the defendant filed pleas of non assumpsit, payment, set-off and statute of limitations, and against the plaintiff's claim he contends that not only has he not overdrawn his account in the bank, but that he has in the plaintiff bank a balance in his favor in the sum of five hundred dollars.

[4] The relation of banker and depositor is the relation of debtor and creditor. The depositor when he deposits money in a bank becomes the creditor of that bank and the bank becomes his debtor for the amount of money deposited. The depositor is entitled to draw orders by checks, drafts or notes, for the payment of money, upon the bank and the bank, if indebted to the drawer of the order in an amount equal or in excess of that appearing upon the order, must pay it upon presentation for payment, and for any balance due the depositor the bank is the debtor for that balance.

[5] When the depositor draws upon the bank in excess of the amount the bank is indebted to him, and the bank honors the order and pays it, such payment by the bank is a loan made to the depositor, and if the loan is not made good the bank may then sue for the repayment of the loan, upon the implied promise on the part of the person to whom the loan was made, to repay the same.

On the other hand, when the bank is indebted to the depositor in an amount exceeding that appearing upon his order presented, the bank must pay it if the order is regular in all respects.

In the present case the question for you to consider and determine is whether or not on the twenty-ninth day of March, 1912, the defendant, George B. W. Rhoades, was overdrawn in his account in the People's National Bank of Middletown, Delaware, the plaintiff in this case, and if overdrawn at that time, then you must determine in what amount, and if you should determine that he was not at that time overdrawn in his said account, then there is nothing further for your determination.

If you believe from the evidence that the defendant overdrew his account in the People's National Bank, and that the checks and notes overdrawing his account were paid by said bank to his use, the plaintiff is entitled to recover in this action the amount of such overdraft remaining due and unpaid by the defendant.

And if you believe from the evidence that the plaintiff paid checks of the defendant, and paid discounted notes for the defendant to an amount exceeding the total amount of his deposits, the

plaintiff is entitled to recover the amount paid by it, for the use and benefit of the defendant, in excess of his total deposits and which remains unpaid by him.

[6] If, gentlemen of the jury, you believe from the evidence that the plaintiff notified the defendant on or about the twenty-ninth day of September, 1911, that one of his checks to the amount of one hundred and seventy-seven dollars and fifty-four cents, had been presented to it for payment and the plaintiff had not at that time any funds of the defendant in its hands to pay said check, and the defendant promised the officers of the plaintiff that if they paid the check he would reimburse the bank, if the plaintiff pursuant to said promise paid said check and the defendant did not have funds in the hands of plaintiff to pay the same, then it is entitled to recover the amount so paid.

[7] When the plaintiff bank paid the checks of the defendant drawn upon the said bank, the presumption of law is that the defendant had funds in the bank to meet checks drawn by him which the said bank is shown to have paid. Such presumption is not conclusive, but it is open to the plaintiff to rebut the presumption of funds in hand by the production of evidence satisfactory to the jury. In considering all the evidence in this case the jury should take into consideration this presumption and also the evidence to rebut it.

[8, 9] It is not only proper that you should, but it is your duty to, consider all the evidence in the case, whether it be oral, published or documentary, and after considering all the evidence you should find a verdict for the party on whose side the evidence preponderates. By preponderance of testimony is meant the greater weight of the evidence and not necessarily the greater number of witnesses.

If after considering the evidence in connection with the law as the court has stated it to you, you find that the defendant was overdrawn, as before stated, in his account in the plaintiff bank your verdict should be for the plaintiff and for such amount as you may find he was overdrawn on March 29, 1912, and now remains unpaid, and if you find that the defendant was not overdrawn as aforesaid then your verdict should be for the defendant.

(Further charge in reply to question by jury as to what they are called upon to determine:)

The first question for you to determine is whether or not the defendant is indebted to the bank in any amount, and if so then for what amount, and if you find him indebted, then your verdict should be for the plaintiff for the amount of that indebtedness. If you find that he is not indebted to the bank at all, then your verdict should simply be for the defendant.

After the jury had retired they sent in to the court the following note:

"To the Honorable Court: Are we at liberty to accept the amount, one thousand four hundred and fifty-seven dollars and forty-three cents as agreed upon by the opposing attorneys, as correct and final? J. F. Halloran, Foreman.

. "This is to save us the time and trouble of making a minute examination of the data."

In reply to the above request for information, sent by the jury, the attorneys on both sides consent and agree that the following statement and figures shall be furnished to the jury by the court:

The attorneys for the plaintiff claim that the checks and notes paid by the bank amounted to twenty-six thousand eight hundred and forty-one dollars and twenty-eight cents.

The same attorneys claim that the total deposits amounted to twenty-five thousand three hundred and eighty-three dollars and eighty-five cents, and that there were no other deposits made by Rhoades.

According to this claim the alleged overdraft is one thousand four hundred and fifty-seven dollars and forty-three cents.

The attorneys for the defendant admit that the said checks and notes amounted to twenty-six thousand eight hundred and forty-one dollars and twenty-eight cents.

The same attorneys claim that more deposits were made than the books show, and that in fact the deposits amounted to more than the checks and notes.

There is, however, no dispute as to the addition of the deposits shown in the books, and if the jury does not believe there were any deposits made by Rhoades other than those appearing in the books they need not go to the trouble of minute examination and addition of amounts.

The above statement was signed by the respective attorneys on both sides.

The jury disagreed.